**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**PACIFIC GAMBLE ROBINSON CO., Respondent.**

**No. 24954.**

United States Court of Appeals, Ninth Circuit.

Jan. 8, 1971.

Marcel Mallet-Prevost (argued), Asst. Gen. Counsel, Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Washington, D. C., Charles Henderson, Director, N.L.R.B., Seattle, Wash., for petitioner.

John E. Iverson (argued), of Ryan, Carlson, Bush, Swanson & Hendel, Seattle, Wash., for respondent.

Before BROWNING, ELY, and CARTER, Circuit Judges.

PER CURIAM:

The Petitioner seeks enforcement of an order which it issued against the Respondent (hereinafter "Pacific").[1] The order is based upon a finding by the Board that Pacific violated sections 8(a) (5) and (1) of the National Labor Relations Act, as amended, 29 U.S.C. § 158(a) (1), (5), by refusing to bargain with the Union.[2] The sole issue is whether the Board's certification of the Union is invalid because the Board erred in concluding, over Pacific's objections and without a hearing, that a part-time employee of the Respondent, one Christensen, was qualified to vote at the representation election. We have concluded that the Board's Petition should be granted.

■ Including Christensen, five employees[3] cast votes in the election.[4] Without counting Christensen's ballot, the vote was 2–2. The ballot of Christensen, who voted for the Union, was challenged by Pacific, on the grounds that his employment had been terminated before the election. The Board, however, determined that Christensen was a regular part-time employee, sufficiently concerned with the terms and conditions of employment in the unit to warrant his participation in the selection of a bargaining representative. While there is some discrepancy as to the exact number of hours worked by Christensen and his prospects of future part-time employment by the company, there is substantial evidence to support the Board's finding in this respect.

■ Pacific contends that Christensen's employment was terminated at a meeting of company management, the day prior to the election. While such a meeting may have occurred, it is undisputed that Christensen was not in any manner advised of this alleged decision, until two days after the election. The Board takes the position that in order for an employer's termination of an employment relationship to be effective, it must be communicated to the employee by some affirmative action on the part of the employer. *See* Westchester Plastics of Ohio, Inc. v. NLRB, 401 F.2d 903, 908 (6th Cir. 1968); Miami Rivet Co., 147 NLRB 470, 483–84 (1964); Otarion Listener Corp., 124 NLRB 880, 881 (1959). In the context of the present proceeding, we agree.

In its brief, Pacific argues that, at the very least, an evidentiary hearing should have been held to resolve factual questions concerning Christensen's part-time status and his purported preelection discharge. During the oral argument in our court, however, the Respondent's attorney forthrightly conceded that were we to adopt the position, as we do, that prior notice to Christensen was a prerequisite to his disqualification, the requested hearing would have served no purpose.

The challenged order will be

Enforced.

1. The Board's decision and order is reported at 174 NLRB No. 91.

2. Teamsters Union, Local 983.

3. By stipulation, "all truckdrivers, warehousemen and helpers, employed by the Employer at its Idaho Falls, Idaho operation."

4. By stipulation, those eligible were those employed on the "last completed payroll period prior to the approval of [the Stipulation] by the Regional Director." The Stipulation was approved March 5, 1968, and the election was held March 20, 1968.